All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. I thank the United States and this honorable court. Be seated please. Before we begin our session today, I think Judge Plager would like to note the presence of some students from Indiana. Yes, we have in our audience today several students from Indiana University and law school and I wanted to welcome them to our court. They're visiting here in Washington and this is an opportunity for them to see our patent lawyers at work and I'm not sure they will or are wanting to be patent lawyers but maybe you'll convince them. Welcome. Welcome. Thank you. Our first case this morning is number 15-1494 A&J Manufacturing, LLC v. ITC. Mr. Carlson. Thank you, Your Honor, and may it please the court, I've reserved five minutes for rebuttal. In this section 337 investigation dealing with accused infringing grills imported from China, dual mode grills, the commission excluded the great majority of the accused grills from importation but did not exclude a limited number on the basis of its interpretation of one of the patent claim limitations that of openable cover. We believe that the commission imposed an unduly narrow interpretation of openable cover and have asked the court to review and reverse the commission's interpretation. Starting with claim one of the... If we uphold their interpretation. Then there is one other... If you uphold their interpretation of openable cover, Your Honor, then there is one other grill that forms a question that we also ask the court to resolve. The exhaust. Correct. Correct. And in particular, does the cover of that particular charbroil grill include an exhaust as the claim term provides. But to return to claim one, openable cover is the issue and the claim limitation that was interpreted by the court. The commission's brief agrees with us that an openable cover, that a cover can comprise two parts. The preferred embodiment shown in the patent is a semi-cylindrical cover that covers over the cooking space and encloses the grill space. But there is in the prior art and intrinsic to the patent prosecution, there was a considerable amount of other prior art that shows two-piece covers. The commission said, well, okay, that word openable modifies the term cover and that means that all parts of the cover, if it's a two-part cover, both parts need to be openable. And frankly, as the Phillips case provides, a person of ordinary skill in the art would not interpret a two-part cover to require that both pieces open. There is art, for example, that shows a fixed piece and an openable part that slides within it. Both the pieces are considered to be the hood or the cover. How do you deal with the prosecution history, which is, I guess, at page 10, 321 of the appendix? And in particular, your honor, talking about the question of whether there was a disclaimer. Well, it's not just a disclaimer, it's also the prosecution history can be used to interpret the claims. Yes, certainly that's true. But starting from the order, and we'll get to that in one moment, but the idea of openable does not require movable as the commission initially interpreted. You think of an openable tent or an openable garage. Well, only the tent flap moves, only the garage door moves, but it still can be openable in order to access the interior. And it's the same with a grill cover. What you really want is to be able to open the grill cover in order to be able to access the interior and manipulate the food that you're cooking. Now, the question is, once we have that straightened out and realized that the commission misinterpreted that term, openable, then we look to... Try to address the language there, because the language seems to be a bit of a problem for you. At best, it would result in a barbecue grill with chimneys connected to exit ports on the fixed portions of the oven smoker enclosures, which are not openable, i.e. not covers. So that's the next question is, once we've got openable cover figured out, do we look to the prosecution history to import that limitation, the fixed portions limitation, as the commission did? This court's precedent requires... You would argue that the language that I just read to you is against you? It is ambiguous at best, Your Honor. What's ambiguous about it? Here's the circumstance. What the examiner was trying to do during prosecution is he had these two references. One, McLean, which was a portable, very simple structure with very shallow pans on a wire frame that you could take to a picnic or something like that. The second was Cox, a gigantic 700-pound structure, the specification itself said very heavy, with chimneys and exit ports and including venting or exhaust beneath the cooking surface, underneath the cooking surface. The argument there that was made in the appeal brief that Your Honor is referring to is this. A person of skill in the art would not be motivated to combine McLean and Cox. And the statement was made was that you couldn't do it. It's impossible to do because you cannot... But you're not addressing the language I quoted to you. The language is this, that where it says IE covers, that means that the exhaust is not going to be in the cover because Cox provides that the exhaust is below the plane of the grill. And the cover, as interpreted in the specification and in the prosecution history, means the enclosure in the area above the grill, Your Honor. So that if we have exhaust below the cover, what it's saying is below fixed portions, IE covers, meaning you're having exhausts that are not in the cover. So even if you could combine, which would be impossible to do because of these two vastly different teachings, what you would end up with is not a combination that the examiner urged would anticipate or render obvious these patent claims because the exhausts are below the level of the cooking surface. They're not on the covers. And that's what that IE not covers reference means. It's ambiguous, perhaps, because the interpretation that the commission relied on is a view or one view, as they say in their brief, of how you might say this. You might say, look, what they're saying here is that covers are not movable. Fixed portions cannot be covers. But the other interpretation is the one that I just gave you, that if you tried to combine these two things and the argument was there's no motivation to do that because it's impossible to do and it would be an unworkable combination. But if you were able to do that and if you tried to do that, you would still not have exhausts on the covers because Cox teaches these exhausts up from underneath. And, in fact, the commission's brief recognizes that. So we're going back to the case law that we've cited to the court, which is that linear technology versus ITC case. Talking about can you import this fixed portions limitation into the claim from deep in the prosecution history and have it limit the scope of the claim invention? You can only do so if, under linear technology, there's a clear intention to limit claim scope by words or expressions of manifest exclusion. Clear intention, we'll get to in a second, but to limit claim scope. Remember that the argument here that's being made in the appeal brief has nothing to do with the claimed invention. It has to do with showing the examiner that even if this combination were possible, it would not result in the combination that the examiner was trying to urge. So it's certainly ambiguous and under the Omega engineering precedent of this court, ambiguity cannot form the basis for this kind of importation of limitation, this kind of disavowal of claim scope. There have to be manifest words of exclusion or restriction. I want to suggest to the court that that means you're talking about our claim now. We'll say we don't claim this. If there was something in the prosecution history that said we don't claim a cover that has fixed portions and an exhaust on the fixed portions, then that would be a manifest exclusion. This is an ambiguous statement relating not to the claims, not to the scope of our invention, but to this proposed combination that the examiner made. It's at best ambiguous. There are multiple interpretations, including the one that I just gave you, and on that basis and under the precedent that this court has stated in the linear tech case, you cannot impose a disavowal of claim scope under those circumstances. Let me ask, and I'll just go very briefly because my initial time at least is going short. Even if you disagreed with us with respect to that first claim, claim 10 is a means plus function claim. The language that Your Honor just quoted regarding fixed portions is an argument that was made in an appeal brief in a separate section dealing with separate patentability only of claim 1. It cannot be imported under the Patent Office's own rules. It cannot be relied on by the examiner regarding the patentability of claim 10, and yet the commission, again, in violation of this court's precedent, took that fixed portions limitation and applied it to claim 10 as well. This is the openable cover means. Correct, Your Honor. Yes. And as we've indicated in our brief, under the MPEP, there is a particular rule that the Patent Office applies, saying you can argue patentability separately, and if you do so, the Patent Office will not combine claims for the purpose of analyzing each argument. They won't group the claims. So the language that Your Honor referred to, the fixed portions limitation that the commission imported, was not used in claim 10 at all. There was a similar argument saying it's impossible to combine McLean and Cox, and the examiner ultimately agreed that you should not do that, but the fixed portions thing that the commission relied on to limit the claim did not appear there. My time is up for the initial presentation. Thank you. Thank you. Ms. Chen? May it please this court, the commission properly found that four grills imported... You'll have to speak up a bit, please. Yes, Your Honor. The commission properly found that four grills imported by Intervenor Char-Broil, and a group of six redesigned grills that are imported by Intervenor's Outdoor Leisure Products, do not infringe any claim of the 712 patent. I'd like to first address appellant's arguments with respect to the openable cover in claims 1 and 17, before going to the openable cover means in claim 10. Now, appellant's counsel argues that the Cox provides exhausts that are below the plane of the grill. The commission respectfully disagrees with ANJ's counsel's characterization of Cox. I'd like to refer the judges to appellant's brief at pages 33 to 34, which reproduces figures 1 to 3 of Cox. Now, the examiner in the office action right before the PTO appeal brief by ANJ relied on Cox for disclosing openable cover. Referring to figure 1 of Cox, which is on page 33 of appellant's brief, the examiner found that Cox discloses a barbecue grill having two cooking units. These two cooking units are denoted by elements 12 and 16. The examiner found that each cooking unit is covered by an openable cover, and this is denoted by elements 38 and 40, and that each of these openable covers includes at least one exhaust. The examiner cited three exhausts, and these are denoted by elements 18, 22, and 92. It's very clear from figures 1 to 3 of Cox that exhaust 18 is in the openable cover enclosure of the grill, and not on the openable cover as the examiner found. This is discussed in the ITC brief on pages 8 to 12. If you look at figure 3, the exhaust element 18 has an opening, which is denoted by element 54, and that is on the grill enclosure, and not on the openable cover, which the examiner cites as element 38. Also, on the other cooking unit, if you look at exhaust 92, exhaust 92 has an opening into the grill enclosure, and that's not on the openable cover that the examiner cites as element 40. You really, well, you can't tell too much by the figures that you're citing, but I, okay, I see your point. So ANJ criticized the commission for using the word fixed in its construction, but ANJ used that word during prosecution to overcome an obviousness rejection over McLean and Cox, and in fact, before the examiner even relied on Cox, the examiner had cited other prior art that's discussed in the ITC brief, such as Nemec and Gennard, also for teaching that the exhaust is on fixed portions of the cooking units, and this is discussed in the ITC brief at pages 8 to 12. In all of these rejections, the examiner recognized that the claims called for the exhaust to be on the openable covers, but he reasoned that placement of exhaust on the covers instead of other parts of the cooking units were mere rearrangements of parts that would not affect the function of the cooking units. And so this was a state of the rejection, and in order to overcome this McLean over Cox rejection, ANJ argued in this PTO appeal brief that even if you were to combine McLean and Cox, the combination would still fail to teach the limitations wherein the first cover includes at least one exhaust, and wherein the second cover includes at least one exhaust. Because, and this is quoted from A10-321, at best it would result in a barbecue grill with chimneys connected to exit ports on the fixed portions of the oven smoker enclosures, which are not openable, i.e. not covers. Does the specification ever define what fixed portions means? The specification does not, other than figures one to three and identifying the openable cover, the specification does not go into any other description of what openable cover and exhaust are. And the specification does not use the word fixed. The place that the fixed comes from is from this prosecution history in the ANJ's PTO appeal brief. And beyond this clear statement that's in the ANJ's PTO appeal brief, there are other parts of the appeal brief that's very relevant here. ANJ also argued that placing the exhaust on the openable cover is not, as the examiner consistently maintained, an obvious substitution, because prior arts such as Oliver taught away from including exhaust on the openable cover. And in view of these arguments, the PTO issued a notice of allowance. Now the ALJ and the commission found that a person of ordinary skill in the art, reading ANJ's statements made in the prosecution history, in view of the specification two, a person of ordinary skill would interpret that ANJ interpreted openable cover to exclude fixed portions of the grill enclosure, and that the exhaust would have to be located on the openable cover instead of on other portions of a grill. And this is discussed in the ALJ's order at 1852 to 857, and the commission's summary determination opinion at 83918 to 925. Now I'd like to also briefly address claim 10. First, the commission construed openable cover means and exhaust means as means plus function limitations. On appeal, ALJ to ANJ challenges the commission's construction of openable cover means, and the commission's non-infringement findings based on that limitation. However, ANJ does not challenge the commission's construction of exhaust means, and the commission's non-infringement findings based on exhaust means limitations. And for that reason, even if the court agrees with ANJ's construction of openable cover means, it must still affirm the commission's finding of non-infringement as to claim 10 and claims 11 through 16, the dependent claims. And finally, I'd like to address the charbroiled grill that's identified in the ITC brief as a charbroiled 4512 grill. There was substantial evidence supporting the commission's finding of non-infringement as to that grill, and this substantial evidence is discussed in the commission opinion at A31 and the ALJ's ID at A5638, both of which cite to respondent's expert testimony at A118 to 120 and ANJ's expert testimony, which supports the commission's finding because ANJ's expert testified that, quote, the alleged exhaust is a space between the openable lid and the grill body. And this quote is from A8341. Even if some evidence detracts from the commission's finding, ANJ has not shown that the commission's finding is unreasonable. Are there any other questions I'd like to leave the rest of my time? Okay. Mr. Harbin? May it please the court, John Harbin for a PILI intervener charbroiled. I agree with everything the ITC's counsel ably said about the open cover means issue. It may be built in suspenders, but I'd like to add one brief point that we briefed that the claims require that the openable cover be attached to each cooking unit. And as we briefed, we submit that means the openable cover is a separate part attached. It doesn't say the openable part of the cover is attached to the cooking unit. So I think that reinforces that the openable cover has to be openable in its entirety. And I want to focus my argument on the issue that we briefed under the right for any reason principle, which you only need reach if you do reverse the commission's ruling, construction of an openable cover and the resulting non-infringement findings. And that is that we submit the proper construction of the term exhaust. Under the proper construction, there is no infringement for three of the charbroiled grills because as to the independent claims one and 17, the term exhaust should be limited to the smokestacks type of structure, which is the only support for exhaust in the specification, depicted in figures one to three of the patent. Initially, let me address the standing argument raised by ANJ, the appellant, that we do not have the right to bring this issue up on appeal and that we should have filed our own appeal. In addition to the fact that the cases from other circuits, ANJ sites, are distinguishable, we believe that argument is contrary to this court's authority. You could have been sanctioned if you filed the cross-appeal. Yes, because we prevailed on all the infringement findings of all of our products, so we could not have filed. And we believe that as a party that participated in the underlying 337 action, we can raise any issue that was litigated to support the commission's finding of no violation. And we could cite, among other things, the surface technology case 780 of second 29. On the substantive issue, we will focus on claim one and 17 and only have a couple of minutes, because we, as ITC's counsel pointed out, ANJ did not appeal the commission's finding that there was non-infringement under claims 10 and 16 as to some grills, and that ANJ had not put on evidence of infringement as to some of the other grills. As to claims 1 and 17, we submit the exhaust should be limited to the support in the specification. And the narrow definition that ANJ gave it in the prosecution history, which we submit is consistent with the ordinary meaning of the term exhaust. The term exhaust does not appear at all in the original 320 application. To overcome rejections, ANJ twice proffered broad claims to openings in the cooking unit. To overcome those rejections, ANJ limited the claims in August of 2011 to covers that included exhaust at that time with a limitation that were configured according to the fuel used in that cooking unit. And ANJ amended the specification in January of 2012 to identify the smokestacks as the exhaust, not just as examples of exhaust. We've cited case laws such as Tronco v. Biomet. There was a recent case in August, this August, GP&E Court v. Apple, 830 F3rd 1365, where the court affirmed the construction of the claim term node as meaning pagers because the specification repeatedly referred to the invention as pagers. And in Inventor 131 declaration, the inventor described the invention as a series of pagers. This is not, we don't have the number of uses, but in this case, as the prosecution, the only support again is the smokestack shown in figures one to three. And as the prosecution continued in the December 2011 interview agenda, the applicant equated the smokestacks with exhaust in the January 2012 amendments to the spec, which is the first time exhaust was used in the spec. The applicant again equated exhaust with the smokestacks, did not refer to the smokestacks as an example of exhaust. So we submit that is how the applicant defined it, limited to smokestack type structures and many of the grills would not infringe under that construction. Thank you. Thank you, Mr. Harlan. Mr. Carlson. Thank you, Your Honor. Addressing Ms. Chen's argument with regard to this Cox reference, she pointed to the exhibits from Cox that are in our brief. But I'd like to point to the court that in the commission's own brief at page 38, there's a discussion of how the examiner perceived Cox and it says, the examiner was unconcerned by the fact that exhausts were located on fixed portions of the grill rather than the cover because having the exhaust on another part of the unit other than the cover would not make the exhaust non-functional. The point is the examiner understood that cover didn't just include fixed portions during all of that argument. The examiner allowed these claims regardless of the fact that the interpretation that Ms. Chen gives to Cox. In regard to what she had to say about, well, where are the exhausts and where are the channels for the exhaust, reasonable minds can differ. Judge Raina indicated that he can see what she's trying to say and maybe others can as well. But that's not the only interpretation. And the point that was raised in the appeal brief did not relate to our particular claims but to the fact that the examiner was wrong in the notion that it would be obvious to one of skill and the art to combine McLean and Cox because it would be unworkable and it would not result in the combination that the examiner posited. With regard to the statement by Ms. Chen that the exhaust has to be on the openable cover, first of all note that on is not used in the claim. The claim says a cover includes an exhaust and what's more, whereas it says in each case for the first and second cooking unit that it must have an openable cover, it doesn't use that modifier openable when it talks about the placement of the exhaust. It merely says that the cover includes an exhaust. So that's further evidence that would lead the examiner away and would lead a person of skill and the art away from this notion that an exhaust must be on a movable part or on an openable part in the way that the language of the claim itself teaches away or argues away from this stilted interpretation and this importation of a limitation from deep in the prosecution history of fixed portions. As the court pointed out, fixed portions appears nowhere in the specification to the patent. It was simply raised in the appeal brief and for no other purpose than to point out to the examiner that the combination of would not result in the combination that he was suggesting. And it was ultimately withdrawn by the PTO and the patent issued in that way. With regard to the Charbroil 4512 grill in just the last few moments that I have here, that grill plainly shows a two part cover. It has a panel fixed to the grill body and then what the commission would call an openable cover, what we would call the second part of the two part cover and between the two is this channel exhaust. There was substantial testimony by Charbroil's chief engineer that that is where the exhaust testing is done in that space, what they call the opening. These grills require gas certification to make sure that there's not a buildup of uncombusted gas inside the cover that would cause a flare up when the user opens the hood. The testing that's done for the certification is done at the exhaust and Alex Gafford, Charbroil's chief engineer, testified that's where they put their test probe. It's clearly an exhaust. And it is machined into the cover. The commission's determination that that was not on the cover is based first of all on its wrong interpretation of openable cover, a wrong interpretation of where the exhaust must be. It simply says includes and the cover itself was designed to include that exhaust. Mr. Gafford testified so. Finally, with regard to the exhaust issue, what Charbroil is doing here is not intervening in support of the commission. Charbroil is intervening to try to oppose the commission's determination with respect to the interpretation of that claim exhaust. And I want to suggest to the court that it would be bad precedent to allow that to take place and to go into the entirety of an attack on the commission's interpretation of exhaust in that regard. The commission got exhaust right. They got openable cover wrong. They gave us relief that we asked for and in part we asked that we get the complete relief from this court. Thank you, Mr. Carlson. We're out of time.